**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| VINNY'S TOWING & RECOVERY, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 24-1044-BAH |
| KBI SOLUTIONS LLC ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Vinny's Towing & Recovery ("Vinny's Towing") brought suit against KBI Solutions LLC ("KBI") and JB Hunt Transport, Inc. ("JB Hunt" or "JBH") (collectively "Defendants") alleging claims under Maryland law arising from the towing and recovery of an overturned tractor trailer. ECF 3. JB Hunt filed a cross-claim against KBI, ECF 5, and a third-party complaint against E&M Express Trucking, LLC ("E&M"), ECF 12. Pending before the Court are four motions filed by JB Hunt: two motions to strike the expert testimony of Wayne Sullivan, ECFs 49 & 66, a motion for summary judgment, ECF 67, and a motion for default judgment as to KBI, ECF 68. Vinny's Towing filed oppositions to the motions to strike and motion for summary judgment, ECFs 69 & 70, and JB Hunt filed replies, ECFs 72 & 73. Also pending before the Court is Vinny's Towing's response to the Court's order to show cause, ECF 71, wherein Vinny's Towing requests an extension of time to effect service on KBI and E&M. ECF 74. Several filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, all four of JB Hunt's pending motions are **DENIED**; Vinny's Towing and JB Hunt are **GRANTED** additional time to serve KBI; and JB Hunt is **DIRECTED** to file a motion for default judgment against E&M or a report as to why such motion would be inappropriate.

## I. BACKGROUND

On December 21, 2022, a tractor trailer, including a trailer owned by JB Hunt, was involved in a four-vehicle accident on Interstate 70 in Washington County, Maryland. ECF 67-2 (State of Maryland motor vehicle crash report), at 2; ECF 69-5, at 2; ECF 69-6 (deposition of Vinny's Towing's Chief Operating Officer, Dustin Wiles), at 82, 81:7–10. The tractor trailer overturned and hit the guard rail on the side of the interstate. ECF 67-2, at 2.

Maryland State Police responded to the scene and contacted Vinny's Towing to provide towing and recovery services for the tractor trailer. ECF 69-6, at 85–86, 84:22–85:1, at 87, 86:11–13. Vinny's Towing is a towing and recovery business located in Frederick, Maryland. *Id.* at 6, 5:14–15, at 26, 25:4–7. It is on several "police towing lists . . . to perform police initiated towing . . . for that police department," including for the Maryland State Police. *Id.* at 63–64, 62:16–63:2. Vinny's Towing has been on the Maryland State Police towing list for over ten years. *Id.* at 64, 63:8–11.

The load in the trailer involved in the accident was brokered by JB Hunt to E&M Express. ECF 67-3, at 2. E&M Express was under a contract that "strictly prohibit[ed] double-brokering," but it nonetheless "double-brokered the subject load to Defendant KBI without [JB Hunt]'s knowledge" or permission. *Id.*

The tractor itself is labeled with KBI's logo, ECF 69-6, at 97, 96:7–9, and the Maryland State Police report identified KBI as the owner of the tractor, ECF 67-2, at 3. However, when

Dustin Wiles, Chief Operating Officer for Vinny's Towing, responded to the scene on December 21, 2022, the truck owner, "Carlos," "represented himself as JB Hunt." ECF 69-6, at 131, 130:14–16. The driver of the tractor trailer also said he was working for JB Hunt. *Id.* at 98, 97:9–10 ("He said he was. He was working for JB Hunt."). That "gentleman . . . logged into the JB Hunt app when he was on the side of the site" and showed Wiles a bill of lading that named JB Hunt as the operating carrier. *Id.* at 97–98, 96:11–97:3; *see also* 69-3, at 1. On December 22, 2022, Carlos called Wiles and "gave [him] authorization to do the [towing] job." ECF 69-6, at 131, 130:4–7. Vinny's Towing was also "in contact with JB Hunt," who Wiles did not recall authorized recovery of the trailer. *Id.* at 132–133, 131:14–132:1. On December 27, 2022, Vinny's Towing began recovery of the overturned tractor trailer. *Id.* at 113, 112:20–22.

After the towing and recovery service was complete, John Hardy, a JB Hunt representative, requested an invoice from Vinny's Towing. *Id.* at 142, 141:11–15; ECF 67-2, at 4. The invoice was for approximately $188,471.33, excluding storage or administration fees. ECF 69-6, at 149–150, 148:19–149:5; ECF 67-6, at 3. JB Hunt "object[ed] to the invoice as excessive and outrageous under the circumstances," refused to pay it, and told Vinny's Towing that it should attempt to recover expenses from KBI. ECF 67-3, at 4–5; ECF 67-6, at 3; ECF 69-4, at 1.

On November 13, 2023, Vinny's Towing filed this lawsuit against both JB Hunt and KBI in the Circuit Court for Baltimore County, bringing claims for quantum meruit and breach of contract against KBI (counts I and II), and quantum meruit against JB Hunt (count III). ECF 3 (state court complaint). After being served on March 18, 2024, *see* ECF 1, at 1, JB Hunt filed an answer in state court, ECF 4, along with a crossclaim against KBI, ECF 5. JB Hunt then removed the case to federal court on April 10, 2024, on the basis of diversity jurisdiction. ECF 1, at 2. On September 3, 2024, JB Hunt filed a third-party complaint against E&M. ECF 12.

In the meantime, Vinny's Towing received an extension to September 30, 2024, to serve KBI. ECF 8 (order to show cause); ECF 11 (order extending service deadline). Vinny's Towing then filed a motion for alternative service, ECF 22, which was denied on November 18, 2024. ECF 25 (memorandum opinion); ECF 26 (order). Vinny's Towing was provided an additional forty-five days from the denial of the motion for alternative service to serve KBI. ECF 26, at 1.

JB Hunt moved for default judgment on its crossclaim against KBI and E&M. ECF 29 (motion for entry of default against E&M); ECF 37 (motion for Clerk's entry of default against KBI); ECF 42 (motion for default judgment against E&M); ECF 43 (motion for default judgment against KBI). JB Hunt's motions for default judgment were denied because "the Court ha[d] doubts as to whether KBI and E&M ha[d] been properly served." ECF 56, at 2; ECF 57.

A scheduling order entered, ECF 44, and Vinny's Towing and JB Hunt commenced discovery. JB Hunt has now filed two motions to strike the testimony of Vinny's Towing's expert witness, Wayne Sullivan ("Sullivan"), ECFs 49 & 66, a motion for summary judgment as to Vinny's Towing's quantum meruit claim against JB Hunt, ECF 67, and a motion for default judgment as to KBI, ECF 68. These motions are ripe for disposition. Vinny's Towing has also requested further time to serve KBI and E&M. ECF 64, at 2; ECF 74, at 1.

## II. MOTIONS TO STRIKE (ECFS 49 & 66)

JB Hunt has filed two motions to strike or, alternatively, exclude Sullivan's expert testimony on behalf of Vinny's Towing under Federal Rule of Civil Procedure 37(c) and under Federal Rules of Evidence 702 and 403. ECF 49, at 1; ECF 66, at 1. Given that the arguments in these motions overlap, the Court will address them together.

### A. Exclusion under Federal Rule of Civil Procedure 37

Federal Rule of Civil Procedure 37 provides a mechanism for sanctions for discovery violations. *See* Fed. R. Civ. P. 37. JB Hunt contends that Vinny's Towing's expert witness reports

under Rule 26(a)(2) were untimely and insufficient, warranting exclusion of Sullivan's expert testimony pursuant to Rule 37. ECF 49-1, at 8.

Federal Rule of Civil Procedure 26(a)(2) requires a litigant to disclose the identity of any expert witness they may use at trial along with a written report prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). The Rule requires that the expert report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." *Id.* "A report is complete, and compliant with Rule 26(a)(2), if it is sufficiently detailed such that 'surprise is eliminated, unnecessary depositions are avoided and costs are reduced.'" *Wiseman v. Walmart Stores, Inc.*, Civ. No. SAG-16-04030, 2017 WL 2865013, at *1 (D. Md. July 5, 2017) *(quoting Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 503 (D. Md. 1997)).

Vinny's Towing's Rule 26(a)(2) disclosures were due on November 10, 2025. ECF 44, at 2. According to JB Hunt, Vinny's Towing produced its first expert disclosure two days late—on November 12, 2025. ECF 49-1, at 2. This expert report consisted of "a single page" with "a word-for-word recitation of the narrative section of Plaintiff's invoice" along with a sentence stating that Sullivan "reviewed this invoice and certify the charges are reasonable and customary within the geographical area." ECF 49-1, at 2; *see also* ECF 49-3, at 8 (invoice summary), at 12–13 (expert report). The Court agrees with JB Hunt that this expert report was both untimely and insufficient. Vinny's Towing provides no excuse for its untimeliness in submitting the report. ECF 58, at 3.

Moreover, Sullivan's first expert report fails to comport with the basic requirements of Rule 26(a)(2), as it does not include, at minimum a "*complete* statement of all opinions the witness will express and the basis and reasons for them," or "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii) (emphasis added). "The United States Court of Appeals for the Fourth Circuit and the district courts in this circuit are clear that an expert report should be a comprehensive document that, by itself, provides all the expert's opinions that will be offered at trial, along with the bases for those opinions." *Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) (citing *Campbell v. United States*, 470 F. App'x 153 (4th Cir. 2012)). As JB Hunt correctly notes, Sullivan merely copied Vinny's Towing's invoice summary word-for-word and then added a single sentence certifying that he believes "the charges are reasonable and customary." ECF 49-3, at 13. As such, Sullivan's first expert report is insufficiently detailed to meet the requirements of Rule 26(a)(2)(B).

In recognition of the deficiencies of the first report, Vinny's Towing submitted a second, more fulsome expert report a week later, on November 19, 2025. *See* ECF 49-4; ECF 58, at 3. Of course, Sullivan's second expert report was still untimely, but Vinny's Towing characterizes the second report as a supplementation under Rule 26(e). ECF 58, at 3; *see also* Fed. R. Civ. P. 26(e)(1) (requiring "[a] party who has made a disclosure under Rule 26(a)" to "supplement its disclosure or response" if it "learns that in some material respect the disclosure or response is incomplete or incorrect"). JB Hunt contends that the second expert report is still insufficient because it does not include a complete list of cases in which Sullivan has testified as an expert in the past four years. ECF 66-2, at 11.

As noted, Federal Rule of Civil Procedure 26(a)(2) requires an expert to include in their written report "a list of all other cases in which, during the previous 4 years, the witness testified

as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). Sullivan's second report includes three cases in which he testified: "*Autobarn v. Miller v. Wampole-Miller Inc.* No. 1:22 CV-03374-LKG, "*Troy Brave v. Grantsville Truck and Trailer LLC*," and "*M and N Towing* (P.G. County District Court)." ECF 49-4, at 8 (formatting altered). According to JB Hunt, Sullivan's case list "was false, as it listed cases in which he had not testified and left off cases in which he did testify." ECF 66-2, at 5. The deposition reflects that Sullivan does not keep track of, and did not remember, all the cases in which he has testified as an expert. ECF 66-7, at 13, 47:8–13. Moreover, Sullivan identified at least one case, *Crete v. Sullivan*, in which he testified as an expert within the last four years that he did not include in his case list. *Id.* at 16, 57:22–58:17. Given that Vinny's Towing does not rebut that Sullivan's expert report includes an inaccurate and incomplete case list, *see* ECF 70, Sullivan's second expert report is also deficient for that reason. Thus, the Court turns to the appropriate sanction.

"Rule 37(c)(1) provides that 'if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Hatami v. Hatami*, Civ. No. WDQ-14-4004, 2015 WL 4509815, at *3 (D. Md. July 24, 2015) (quoting Fed. R. Civ. P. 37(c)(1)). "A court has 'broad discretion' to determine whether an untimely discovery disclosure is substantially justified or harmless." *Disney Enterprises, Inc. v. Kappos*, 923 F. Supp. 2d 788, 796 (E.D. Va. 2013). To determine whether there is substantial justification or harmlessness, courts may consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States Rack*

*and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003). "District courts need not expressly consider each *Southern States* factor." *Wiseman*, 2017 WL 2865013, at *2.

JB Hunt seeks to exclude Sullivan's testimony in its entirety. ECF 66-2, at 11. The Court concludes that exclusion is too harsh a sanction for the deficiencies described above. Several factors weigh in Vinny's Towing's favor. Both parties agree that Sullivan's expert testimony is essential to Vinny's Towing's claims. ECF 49-1, at 11; ECF 58, at 4. Any surprise to JB Hunt is minimal since Vinny's Towing submitted its expert reports only slightly after the deadline, and JB Hunt has had the opportunity to depose Sullivan on the contents of both reports. *Cf. Clear Touch Interactive, Inc. v. Ockers Co.*, 171 F.4th 715 (4th Cir. 2026) (finding no abuse of discretion where the district court excluded a witness that was disclosed after the discovery deadline because the defendant "was robbed of the opportunity to depose him and to properly prepare for cross-examining him at trial"). And as no trial date has been set, surprise on the eve of trial resulting from Plaintiff's late submission is not a factor. *Hatami*, 2015 WL 4509815, at *3 ("[N]o trial date has been set, and therefore surprise on the eve of trial as a result of Plaintiff's late submission is not a concern."). Moreover, any surprise could be cured by ordering Sullivan to provide a fulsome case list to JB Hunt, if JB Hunt were to request one.

However, the fifth factor weighs in favor of JB Hunt. Vinny's Towing's provides no justification for the delay in submitting its first expert report. ECF 58, at 3. It, however, contends that Sullivan's second expert report was not late, but a supplementation under Rule 26(e). The Court finds this explanation lacking. Sullivan's second expert report is not a true supplementation, i.e., one that corrects inadvertent errors or omissions, but instead an attempt at "an end-run around the normal timetable for conducting discovery" through "supplementing an expert report with a new and improved expert report." *Kappos*, 923 F. Supp. 2d at 795 (quoting *East West, LLC v.*

*Rahman*, No. 1:11cv1380, 2012 WL 4105129, at *6 (E.D. Va. Sept. 17, 2012)). Nor has Vinny's Towing attempted to explain its failure to provide information regarding Sullivan's prior testimony as required by the Federal Rules. *See* ECF 58; ECF 70.

Nevertheless, weighing the factors overall, the Court concludes that these deficits do not warrant the harsh sanction of striking Sullivan's expert testimony in its entirety. "Excluding expert testimony is an extreme sanction and, if the evidence is critical, one not normally to be imposed absent a showing of willful deception or flagrant disregard of the court order by the proponent." *Humane Soc. of U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, Civ. No. DKC-13-1822, 2014 WL 3055568, at *8 (D. Md. July 3, 2014) (citation modified). Given that exclusion of Sullivan's testimony is particularly harsh and may be outcome determinative, JB Hunt's motion to exclude his testimony under Rule 37(c) is denied. *Cf. Metts v. Airtran Airways, Inc.*, Civ. No. DKC-10-0466, 2010 WL 4183020, at *3 (D. Md. Oct. 22, 2010) (denying exclusion of expert testimony under Rule 37(c)(1) where "[s]triking expert testimony is a particularly harsh sanction and in this case almost certainly would be outcome determinative")..

**B. Exclusion under the Federal Rules of Evidence**

JB Hunt contends that even if not excluded for discovery violations, Sullivan's testimony should still be excluded under Federal Rules of Evidence 702 and 403. ECF 49-1, at 11; ECF 66-2, at 13.

"Federal Rule of Evidence 702 provides that an expert who is qualified 'by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise' if 'the expert is proposing to testify to (1) scientific [or otherwise specialized] knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" *Halig v. Nat'l Bd. of Examiners of Optometry, Inc.*, Civ. No. BAH-22-2118, 2024 WL 3253561, at *4 (D. Md. July 1, 2024) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). "The proponent of

the expert bears the burden to demonstrate that their witness is qualified to testify as an expert." *Id.* (citing Fed. R. Evid. 702). "A district court considering the admissibility of expert testimony exercises a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant." *Id.* (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). "The reliability inquiry should be a flexible one, and should focus on the principles and methodology employed and not the conclusions reached." *Id.* (internal quotation marks omitted) (quoting *Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 296 (4th Cir. 1998)). "In order for an opinion to be reliable, it must be 'based on sufficient facts or data,' 'the product of reliable principles and methods,' and 'reflect[ ] a reliable application of the principles and methods to the facts of the case.'" *Id.* (quoting Fed. R. Evid. 702 (b)–(d)). "Furthermore, 'the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct.'" *Id.* (quoting *Westberry*, 178 F.3d at 261).

JB Hunt argues that Sullivan's expert testimony is not reliable because his "'opinions' are not based on any applicable facts or data," he "conducted no investigation," and he "did not use any methodology in reaching his opinion." ECF 66-2, at 14–15 (emphasis omitted). "The Fourth Circuit has held that an expert may testify on the basis of either 'experience alone,' or 'experience in conjunction with other knowledge, skill, training or education.'" *Bunting Graphics, Inc. v. Whiting-Turner Contracting Co.*, Civ. No. LKG-19-2323, 2022 WL 14664724, at *7 (D. Md. Oct. 25, 2022) (quoting *U.S. v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)). Here, neither party disputes that Sullivan possesses general expertise about the towing industry based on his over fifty years of experience. ECF 49-1, at 13. Sullivan's expert report states that he considered towing industry standards for billing over the years, *see* ECF 49-4, at 4, along with photos of the accident scene, the weather the day of the recovery, and his own experience, to conclude that Vinny's Towing's

invoice for towing and recovery of the overturned tractor trailer was reasonable. ECF 49-4, at 7. Although JB Hunt takes issue with what they view as holes in Sullivan's expert opinion, *see, e.g.*, 66-2, at 15 (arguing Sullivan "completely ignored the police report, police bodycam footage, and police dashcam footage"), "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," rather than exclusion. *In re Titanium Dioxide Antitrust Litig.*, Civ. No. RDB-10-0318, 2013 WL 1855980, at *3 (D. Md. May 1, 2013) (quoting *Daubert*, 509 U.S. at 595); *see also Joyner v. Walmart, Inc.*, Civ. No. EA-25-1300, 2026 WL 1593319, at *5 (D. Md. June 3, 2026) ("[Q]uestions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility of the witness' assessment, not its admissibility." (citation omitted)). Accordingly, the Court concludes that Sullivan's testimony is sufficiently reliable and will not be excluded for that reason.[2]

JB Hunt also briefly asserts that Sullivan's testimony should be excluded under Federal Rule of Evidence 403 because it is "conclusory, speculative, and unsupported" and "has the potential to be both powerful and quite misleading." ECF 49-1, at 14–15 (internal quotations omitted). Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. JB Hunt fails to explain how Sullivan's testimony would be misleading to a jury except to assert that it is "conclusory, speculative, and unsupported." ECF 49-1, at 14. Without more, the Court cannot conclude that

[2] JB Hunt does not argue that Sullivan's proffered expert testimony is irrelevant.

exclusion is appropriate under Rule 403 at this time. Accordingly, Sullivan's testimony will not be excluded on this basis. JB Hunt's motions to strike, ECFs 49 and 66, are denied.

## III. MOTION FOR SUMMARY JUDGMENT (ECF 67)

JB Hunt moves for summary judgment on Vinny's Towing's quantum meruit claim against it. ECF 67.

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 372 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per

curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 372 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

### B. Analysis

Vinny's Towing brings one claim for quantum meruit against JB Hunt. ECF 3, at 5. Maryland law distinguishes between two types of quantum meruit claims, one based on an implied-in-fact contract (usually designated as quantum meruit) and the other based on an implied-in-law contract (usually designated as unjust enrichment)." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 598 (D. Md. 2018) (quoting *Sanders v. Mueller*, 133 Fed.Appx. 37, 42 n.3 (4th Cir. 2005)). "[B]oth theories are predicated on recovering for services rendered with the expectation of payment and where the other party expected, or 'should have expected,' to pay for them, even though these expectations were not communicated expressly." *Aton Ctr., Inc. v. CareFirst of Maryland, Inc.*, Civ. No. DKC-20-3170, 2021 WL 1856622, at *8 (D. Md. May 10, 2021) (quoting

*Kantsevoy*, 301 F. Supp. 3d at 598–99). As JB Hunt points out, the amended complaint does not identify which theory of quantum meruit Vinny's Towing wishes to pursue. ECF 67-1, at 7. The Court will therefore analyze Vinny's Towing's quantum meruit claim against JB Hunt under both theories.

1. Implied-in-Fact Contract

An implied-in-fact contract is "an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Kantsevoy*, 301 F. Supp. 3d at 598 (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 (Md. 2000)). "An implied-in-fact contract is inferred from conduct of parties and arises where plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefore, and defendant, knowing such circumstances, avails himself of [the] benefit of those services." *Id.* (internal quotation marks omitted) (quoting *Dashiell*, 747 A.2d at 606 n.6). "The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them." *Mogavero v. Silverstein*, 790 A.2d 43, 53 (Md. App. 2002) (citation omitted). "Recovery on a contract implied in fact . . . is based on the amount that the parties intended as the contract price or, if that amount is unexpressed, the fair market value of the plaintiff's services." *Id.* "An implied-in-fact contract *refers to that class of obligations which arises from mutual agreement and intent to promise*, when the agreement and promise have *simply not been expressed in words*. Despite the fact that no words of promise or agreement have been used, *such transactions are nevertheless true contracts*, and may properly be called inferred contracts or contracts implied in fact." *Kantsevoy*, 301 F. Supp. 3d at 598–99 (emphasis in *Mohiuddin*) (internal quotation marks omitted) (quoting *Mohiuddin*, 9 A.3d at 865). To establish a quantum meruit claim based on an

implied in fact contract, Vinny's Towing must establish (1) that it rendered valuable services to JB Hunt; (2) that Vinny's Towing intended to receive compensation for those services; and (3) that the services were rendered under such circumstances that reasonably notified JB Hunt that Vinny's, in providing the services, intended to be compensated. *Int'l Waste Indus. Corp. v. Cape Env't Mgmt., Inc.*, 988 F. Supp. 2d 542, 554 (D. Md. 2013), *aff'd*, 588 F. App'x 213 (4th Cir. 2014).

Here, JB Hunt does not argue that Vinny's Towing did not render valuable services or intend to receive compensation for those services. ECF 67-1, at 7. Instead, JB Hunt contests the third element and argues that it "was not aware that Plaintiff had performed any services related to JBH's trailer until after Plaintiff's services were complete" and that Vinny's Towing's corporate designee "conceded that JB Hunt did not contract, request, or authorize any work by Plaintiff related to the subject trailer or the Occurrence." *Id.* The Court concludes that there is a genuine dispute of material fact as to this element. As noted, JB Hunt denies that it had any knowledge of Vinny's Towing's services until after the recovery services were complete. ECF 67-3, at 4 (answering that JB Hunt learned for the first time "that Vinny's ha[d] possession of a JBH trailer" on December 28, 2022, after the recovery service was complete). However, Vinny's Towing's corporate designee, Dustin Wiles, testified that on December 22, 2022, the truck owner, Carlos, "represented himself as [with] JB Hunt" and gave authorization for Vinny's Towing to complete the recovery. ECF 69-6, at 131, 130:5–16. Moreover, Wiles observed that the driver of the tractor trailer "logged into the JB Hunt app when he was on the side of the site" and explicitly said he "was working for JB Hunt." *Id.* at 98, 97:1–11. On the date of the recovery, December 27, 2022, Vinny's Towing still "had information that J.B. Hunt was the carrier," *id.* at 96, 95:7–10, based on Carlos' representation, *id.* at 98, 97:10–11, at 99, 98:11–15. And while the dates are not clear, at

some point, Vinny's Towing representatives "did get in contact with JB Hunt," but Wiles did not recall that JB Hunt gave authorization to recover the trailer. *Id.* at 132–133, 131:14–132:1.

If a jury were to credit Wiles' testimony, it could conclude that JB Hunt was reasonably notified that Vinny's Towing intended to be compensated for the recovery of JB Hunt's trailer. According to Wiles' testimony, at least one representative of JB Hunt was aware of Vinny's Towing's intention to provide clean-up services for JB Hunt's trailer, *Id.* at 132–133, 131:14–132:1, which customarily involves billing for such a service, *see id.* at 68, 67:1–12 (discussing how rates are set for towing on behalf of the Maryland State Police). Indeed, JB Hunt requested an invoice for Vinny's Towing's services after the recovery was completed. ECF 69-6, at 142, 141:11–15; ECF 67-2, at 4. The recovery service was also the subject of discussion between Carlos and the driver, who held themselves out as JB Hunt representatives. *Id.* at 98, 97:1–11. That JB Hunt did not explicitly authorize the work is of no moment, as authorization would create an express contract, and a breach of express contract claim is not alleged here. *See Troy Brave LLC*, 2023 WL 6244658, at *5 (explaining that a breach of contract claim involves a defendant that owed a plaintiff a contractual obligation and a breach of that obligation (citing *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 267 (Md. 2018))). The Court cannot conclude that there is no genuine dispute of material fact as to whether services were rendered under such circumstances that reasonably notified JB Hunt that Vinny's Towing intended to be compensated. Accordingly, summary judgment is denied as to a quantum meruit based on an implied-in-fact contract theory.

2. <u>Implied-in-Law Contract</u>

"In contrast to express and implied-in-fact contracts, a contract implied-in-law, also known as a 'quasi-contract' or unjust enrichment, is a '[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'"

*Kantsevoy*, 301 F. Supp. 3d at 599 (*Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 114 A.3d 676, 689 (Md. 2015)). "However, unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. *They are obligations created by law for reasons of justice.*" *Id.* (emphasis in *Mohiuddin*) (internal quotation marks omitted) (quoting *Mohiuddin*, 9 A.3d at 865). To prevail under this theory, Vinny's Towing must establish "(1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Moon v. Veritas Techs. LLC*, Civ. No. BAH-21-2750, 2025 WL 1865709, at *11 (D. Md. July 7, 2025).

JB Hunt contends that there was no benefit conferred upon it, that it had no knowledge or appreciation of Vinny's Towing's services until after the recovery was complete, and that it did not retain any benefit from Vinny's Towing because the "trailer was a total loss." ECF 67-1, at 8. First, there is a question of material fact as to whether a benefit was conferred upon JB Hunt. JB Hunt contends that no benefit was conferred upon it because it "was not the operating motor carrier." *Id.* However, the trailer involved in the accident was owned by JB Hunt and Vinny's Towing provided services to remove the overturned trailer from the highway. Moreover, Wiles testified that JB Hunt's status as the carrier was not dispositive as to whether Vinny's Towing would seek payment from JB Hunt. ECF 67-5, at 8, 150:3–10 (Q: "And so if JB Hunt was not the carrier for this – for this load, you would not be seeking the full amount of the invoice from JB Hunt. Is that accurate?"; A: "That is incorrect. It would be whoever contracted for the carrier and the representation of the carrier."). Accordingly, a factfinder could conclude that the recovery service was a benefit conferred upon JB Hunt. Next, whether JB Hunt had knowledge of the

benefit at the time of the incident is immaterial. "Maryland courts have previously opined that a defendant need not necessarily have contemporaneous knowledge of the benefit conferred unto them in determining the sufficiency of a quantum meruit claim." *Troy Brave, LLC v. Grantsville Truck & Trailer, LLC*, Civ. No. JMC-22-02409, 2023 WL 6244658, at *7 (D. Md. Sept. 26, 2023). "If a plaintiff is mistaken as to the duties or rights that he or she owes another and because of his mistake confers a benefit upon another, that plaintiff is often entitled to recover the value of that benefit, in spite of the fact that the recipient was given no opportunity to decline it." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 355 (Md. 2007) (citation modified). Moreover, even if JB Hunt's knowledge were material, there is a genuine dispute of fact as to whether JB Hunt was aware of the recovery service given that Wiles testified that he communicated with JB Hunt "before the . . . recovery." ECF 69-6, at 132, 131:14–20. Finally, regardless of the value of the trailer after the accident, a factfinder could conclude that JB Hunt has retained the benefit of Vinny's Towing's clean up services by not having to provide any services of its own to collect its damaged trailer. *Cf. Troy Brave, LLC*, 2023 WL 6244658, at *7 (noting that "[a]t some point in time following the accident a towing service would necessarily have to clear the wreckage"). Accordingly, summary judgment is denied as to any quantum meruit claim based on a theory of implied-in-law contract. For these reasons, JB Hunt's motion for summary judgment is denied.

## IV. <u>MOTION FOR DEFAULT JUDGMENT (ECF 68)</u>

JB Hunt also moves for default judgment on its cross claim against KBI. ECF 68.

### 1. <u>Legal Standard</u>

Pursuant [to] Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any

allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g., Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

2. Analysis

*i. Service*

Before addressing whether KBI is liable and, if so, what damages it is liable for, the Court must address whether KBI has been properly served and nonetheless failed to file a responsive pleading. *See Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant."). JB Hunt contends that KBI was properly served "via USPS Certified Mail on May 8, 2025" to the owner of KBI, Carlos Banks, at "727 Mount Prospect Avenue, NE, Newark, NJ 07104." ECF 68-1, at 2–3.

Rule 4(h) of the Federal Rules of Civil Procedure governs service on a corporation within the United States. *See* Fed R. Civ. P. 4(h). This rule allows for a corporation to receive service of

process by any means allowed by the state where the district court is located, or the state where service is to be effected. *See* Fed R. Civ. P. 4(h)(1)(A). Subsection (1)(B) authorizes service upon a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

In Maryland, where the district court is located for purposes of Rule 4(h), service is made upon a limited liability company by serving its resident agent. *See* Md. R. 2-124(h). Pursuant to that rule, "[s]ervice is made upon a limited liability company by serving its resident agent. If the limited liability company has no resident agent or if a good faith attempt to serve the resident agent has failed, service may be made upon any member or other person expressly or impliedly authorized to receive service of process." *Id.* Further, service can be perfected "by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery—show to whom, date, address of delivery.'" Md. R. 2-121(a)(3).

In New Jersey, where JB Hunt sought to effect service on Carlos Banks, "[t]he primary method of obtaining in personam jurisdiction over a defendant [] is by causing the summons and complaint to be personally served within [New Jersey] pursuant to [N.J. Ct.] R. 4:4-3." N.J. Ct. R. 4:4-4(a). "Service may be '[u]pon a corporation, by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent . . . .'" *Resol. Mgmt. Consultants, Inc. v. Design One Bldg. Sys. Inc.*, No. 23-1289, 2024 WL 4471728, at *3 (3d Cir. Oct. 11, 2024) (citing N.J. Ct. R. 4:4-4(a)(6)). As it relates to service by mail, N.J. Ct. R. 4:4-3(a) provides, in pertinent part, that "[i]f personal

service cannot be effected after a reasonable and good faith attempt, which shall be described with specificity in the proof of service required by R. 4:4-7, service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant or a person authorized by rule of law to accept service for the defendant or, with postal instructions to deliver to addressee only, to defendant's place of business or employment." N.J. Ct. R. 4:4-3(a). Rule 4:4-7 provides that "[i]f service is made by mail, the party making service shall make proof thereof by affidavit which shall also include the facts of the failure to effect personal service and the facts of the affiant's diligent inquiry to determine defendant's place of abode, business or employment. With the proof shall be filed the affidavit or affidavits of inquiry, if any, required by R. 4:4-4 and R. 4:4-5."

Thus, under N.J. Ct. R. 4:4-3, service by mail is not effective "unless plaintiff first made 'a reasonable and good faith attempt' to serve defendant personally." *Beniquez v. Atl. Supply, LLC*, No. CV 22-06198 (CPO), 2024 WL 4903599, at *4 (D.N.J. Nov. 25, 2024) (citing *City of Passaic v. Shennett*, 390 N.J. Super. 475, 483 (App. Div. 2007)). As noted in the relevant rule, before service by mail can be permitted, an affidavit must be submitted demonstrating "that despite diligent effort and inquiry, personal service [within New Jersey] cannot be made." *Guardian Life Ins. Co. of Am. v. Est. of Matesic*, 2016 WL 3763340, at *2 (D.N.J. July 14, 2016) (quoting N.J. Ct. R. 4:4-4(b)(1)). Diligent efforts have been described as requiring an "energetic effort to search and find a defendant whose address is unknown, or who is allegedly evading service, before resorting to alternate means of substitute service." *Tucker v. Nault*, No. CV 22-4719 (CPO/SAK), 2023 WL 5346603, at *2 (D.N.J. Aug. 21, 2023) (citation omitted). Finally, "a party who effectuates service by certified mail must submit 'the return receipt card' or a 'printout of the electronic confirmation of delivery [containing] an image of the recipient's signature.'" *Mouzone*

*v. W. Mkt. Associations LLC*, No. CV 25-6317 (ES) (JSA), 2025 WL 2989112, at *4 (D.N.J. Oct. 6, 2025) (quoting *Wingate Inns Int'l, Inc. v. Hanna G.N. Corp.*, 2022 WL 154398, at *2 (D.N.J. Jan. 18, 2022)).

According to JB Hunt, "KBI is a single-member limited liability company" of which Carlos Banks ("Banks") is the sole organizer. ECF 68-1, at 2. JB Hunt also submits records from the Pennsylvania Department of State reflecting the same. ECF 68-3, at 1. The address for KBI is listed as "242 Snapdragon Way, Rear Lot, Allentown, PA 18104." *See* ECF 68-2, at 1; ECF 68-3, at 1; ECF 68-4, at 1. JB Hunt unsuccessfully attempted to personally serve Banks at the Pennsylvania address via private process server on September 16, 17, and 18, 2024. ECF 68-7, at 1. JB Hunt then "ran a skip trace on Carlos Banks in an attempt to find an updated address," which revealed a personal address of 727 Mount Prospect Ave NE, Newark, NJ 07104 from March 2019 to April 2025. ECF 68-8, at 1. JB Hunt attempted to personally serve Banks at that Newark, New Jersey address via private process server on May 3, 2025. ECF 68-9, at 1. The affidavit from the process server reflects that he "attempted to serve the above named individual/entity" on May 3, 2025, and that "the entity moved." ECF 68-9, at 1 (capitalization altered). JB Hunt then attempted service via certified mail to "KBI Solutions, LLC, ATTN: Carlos Banks, 727 Mount Prospect Ave. NE, Newark, NJ 07104." ECF 39, at 1. The certified mail is reflected as "delivered left with individual," ECF 39-1, at 2 (capitalization altered), and the signature of the recipient is illegible, *id.* at 1.

The record reflects that KBI has not been properly served. The evidence submitted by JB Hunt shows that Banks stopped residing at the New Jersey address in April of 2025, *see* ECF 68-8, at 1, and the private process server that attempted service in May of 2025 confirmed that "the entity moved," *see* ECF 68-9, at 1 (capitalization altered). And although certified mail was "left

with [an] individual," ECF 39-1, at 2 (capitalization altered), it is not clear that individual was Banks, especially given that the recipient's signature is illegible, *id.* at 1, and noting that Banks had purportedly moved from that address in April of 2025. Because the record shows that Banks no longer lived at the New Jersey address when service was attempted, service on KBI is not complete. As JB Hunt has failed to effect service on KBI, the motion for default judgment is denied and the entry of default against KBI is vacated. *See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984) (holding that without valid service of process, the district court lacked jurisdiction to enter default judgment against the defendant); *Hodges v. Washington Metro. Area Transit Auth.*, Civ. No. CBD-14-0891, 2014 WL 5797754, at *3 (D. Md. Nov. 5, 2014) (noting that "proper service is a pre-requisite for an entry of default, and entry of default is a pre-requisite for a default judgment").

The Federal Rules of Civil Procedure allow a plaintiff 120 days to properly serve a defendant after a complaint is filed. *See* Fed. R. Civ. P. 4(m). JB Hunt's deadline to serve KBI has long passed. *See* ECF 26, at 1 (ordering JB Hunt to serve KBI by January 2, 2025); ECF 56 (denying JB Hunt's first motion for default judgment against KBI but inviting JB Hunt to re-file the motion after addressing service deficiencies). If a defendant is not served within that period, Rule 4(m) requires a court-on motion, or on its own, after notice to the Plaintiff, to "dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Given that both JB Hunt and Vinny's Towing have failed to timely serve KBI, the Court addresses both parties on this subject below.

**B. Extension of Service**

In a January 22, 2026 status report, Vinny's Towing informally requested an extension of time to serve KBI and E&M. ECF 64, at 2. Because Vinny's Towing did not address the Rule

4(m) good cause standard in making its request, the Court ordered Vinny's Towing to show cause as to why the deadline to serve KBI and E&M should be extended. ECF 71, at 3. Vinny's Towing responded to the show cause order and requested additional time to serve KBI and E&M along with leave to file a motion for alternative service to serve Progressive Insurance Company, "who is believed to be the liability insurance carrier for KBI." ECF 74, at 5–6.

"Federal courts have identified several non-exhaustive factors that may guide the discretionary decision of whether to enlarge the service period." *United States ex rel. Arthur v. THD Am., Inc.*, Civ. No. ELH-16-2571, 2025 WL 1518884, at *7 (D. Md. May 28, 2025) (quoting *Brodnik v. Harris*, DAF-22-312, 2023 WL 2872684, at *2 (S.D. W. Va. Apr. 10, 2023)). "These factors include the following: '(i) the possibility of prejudice to the defendant, (ii) the length of the delay and its impact on the proceedings, (iii) the reason(s) for the delay and whether the delay was within the plaintiff's control, (iv) whether the plaintiff sought an extension before the deadline, (v) the plaintiff's good faith, (vi) the plaintiff's pro se status, (vii) any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling, and (viii) whether time has previously been extended.'" *Id.* (quoting *Brodnik*, 2023 WL 2872684, at *2).

In response to the show cause order, Vinny's Towing contends that "KBI exhibits ghost like qualities and is purposeful in placing obstacles to block service attempts." ECF 74, at 3. It does not explain, however, the "obstacles" that KBI has used to "block service attempts." *Id.* Vinny's Towing also "cannot speak to the status of E&M trucking." *Id.* at 2. Vinny's Towing also contends that "a default judgment against KBI could help resolve this matter with a contribution of funds" from its insurer, Progressive Insurance." *Id.* at 2. Vinny's contentions are generally unsupported by any evidence and thus fail to establish good cause to enlarge the service window.

Nevertheless, "[i]f good cause is not shown, the Court may still choose to extend the time for service but is not required to do so." *Grier v. United States Dep't of Housing and Urban Development*, Civ. No. PWG-21-2165, 2022 WL 17467671, at *2 (D. Md. Dec. 6, 2022) (citing *Davis v. Univ. of N. Carolina at Greensboro*, WLO-19-661, 2022 WL 3586093, at *4 (M.D.N.C. Aug. 22, 2022)). Here, because Vinny's Towing and JB Hunt have both encountered difficulties serving KBI, the Court will provide an additional sixty (60) days for both parties to serve KBI. Further extensions are unlikely to be granted. As to Vinny's Towing's request for leave to file a motion for alternative service, the Court notes that leave of court is not required to file such a motion. However, if Vinny's Towing decides to file a motion for alternative service, it shall do so within fourteen (14) days of this Order.

The Court will deny Vinny's Towing's request as it relates to E&M because Vinny's Towing has not named E&M as a defendant in its complaint and, therefore, there is no service deadline for Vinny's Towing to extend. However, the Court observes that the record does not reflect that E&M has been served with JB Hunt's third-party complaint. *See* ECF 56, at 2 (denying default judgment because "the Court has doubts as to whether KBI and E&M have been properly served"). In a January 22, 2026 status report, JB Hunt asserted that it "believe[d] it has properly served [E&M] and will submit the appropriate documentation to the Court in the renewed motions for default judgment." ECF 63, at 3. However, JB Hunt has not submitted any proof of service nor filed a motion for default judgment as to E&M. Accordingly, the Court orders JB Hunt to either file and serve by mail on E&M a motion for default judgment (including proof of valid service) or provide a report as to why such a motion would be inappropriate, within 30 days of the issuance of this memorandum opinion and the accompanying order.

## V. CONCLUSION

For the foregoing reasons, JB Hunt's motions to strike, ECF 49 and ECF 66, motion for summary judgment, ECF 67, and motion for default judgment, ECF 68, are denied. Vinny's Towing and JB Hunt are granted sixty (60) days from the date of this order to effectuate service on KBI. If Vinny's Towing wishes to file a motion permitting alternative service on KBI, it shall do so within fourteen (14) days from the date of this order. JB Hunt is directed to either file and serve by mail on E&M a motion for default judgment (including proof of valid service) or provide a report as to why such a motion would be inappropriate, within 30 days of the issuance of this memorandum opinion and the accompanying order.

A separate implementing order will issue.

Dated: August 13, 2026

/s/
Brendan A. Hurson
United States District Judge